[Nos. C013147, C013618. Third Dist. Apr. 1, 1994.]

DANA K. RIPLEY et al., Plaintiffs and Respondents, v.
CONSTANTINE PAPPADOPOULOS et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, V, VI, VII.

COUNSEL

Brodovsky & Brodovsky, Donald M. Wanland, Jr., David L. Bergren and Gordon W. Egan for Defendants and Appellants.

Adamo & Nevarez and John B. Adamo for Plaintiffs and Respondents.

OPINION

SPARKS, Acting P. J.—This is an appeal from a money judgment in favor of plaintiffs and against defendants Constantine Pappadopoulos and Metron Enterprises, Inc., awarded in an action for breach of contract, breach of fiduciary duty, misappropriation of partnership property and unjust enrichment.[1] Following a court trial, a judgment for $315,958 was entered against defendants. By subsequent order the court awarded attorney fees and costs to the plaintiffs. Defendants filed separate notices of appeal from the judgment and from the award of attorney fees and costs. We consolidated the appeals for decision.

In the published portion of this opinion we decline to follow the holding of *Bussey* v. *Affleck* (1990) 225 Cal.App.3d 1162 [275 Cal.Rptr. 646], that expert witness fees and various other nonstatutory litigation expenses are recoverable as costs when a contract provides for the recovery of attorney fees and costs by the prevailing party. Instead we hold that expert witness fees and other litigation expenses not allowed by statute are not recoverable as costs.

In the unpublished portion we hold that the judgment must be modified with respect to the recovery for a finder's fee but otherwise reject defendants' remaining contentions. Accordingly, we shall modify the judgment with respect to the costs and finder's fee and then affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute arose out of the development and sale of the Chesapeake Commons apartments in Rancho Cordova. Defendant Pappadopoulos planned to acquire property and construct 600 apartment units and for this purpose desired to form a limited partnership. The plan was that each of the

---

[1]The plaintiffs are Dana K. Ripley, H. Robert Ripley, Lester Finkel, Eppaminondas G. Johnson, John Karsant, George Koufasimis, Zinfandel I, Limited (Zinfandel I), and Zinfandel II, Limited (Zinfandel II), limited California partnerships.

partners would contribute some capital and the majority of the funds needed for the project would be borrowed. The lender, Brookside Savings and Loan, was precluded, apparently by the Federal Deposit Insurance Corporation, from making a loan of the required amount to a single limited partnership. In order to obtain financing the project was split into two segments with two limited partnerships formed among the same partners.

The two limited partnerships, Zinfandel I and Zinfandel II, were identical in all respects but two: (1) Zinfandel I was formed to develop a 304-unit segment of the project and Zinfandel II was formed to develop a 296-unit segment of the project; and (2) Pappadopoulos was the named general partner in Zinfandel I while John Evrigenis, M.D., was the named general partner in Zinfandel II. At trial Pappadopoulos explained that Dr. Evrigenis was named as general partner in Zinfandel II solely for purposes of qualifying for a loan. He was not intended to, and did not, exercise any control over the project which remained under Pappadopoulos's management and control.[2]

The written limited partnership agreements provided, among other things: "The General Partner shall exercise ordinary business judgment in managing the affairs of the Partnership. Unless fraud, deceit, or a wrongful taking is involved, the General Partner shall not be liable or obligated to the Limited Partners for any mistake of fact or judgment made by the General Partner in operating the business of the Partnership that results in any loss to the Partnership or its Partners. . . ." This provision was subsequently amended to add gross negligence to the list of behaviors that could result in liability to the general partner.

The written limited partnership agreements also included a list of prohibited transactions. Among other things, the general and limited partners agreed that they would not "[d]isclose to any nonpartner any of the Partnership business practices, trade secrets, or any other information not generally known to the business community." The agreements further provided: "The General Partner shall not use, and hereby specifically promises not to use,

---

[2] According to Pappadopoulos, Brookside Savings and Loan was prohibited from lending more than $12 million to any one qualified individual while the entire project required $18.75 million in borrowed funding. Accordingly, in order to secure sufficient financing it was necessary to split the project into two segments to be constructed by two limited partnerships with different general partners. Dr. Evrigenis was chosen from among the limited partners to be the named general partner in Zinfandel II because his financial standing best qualified for the loan. According to Pappadopoulos, the limited partners knew Dr. Evrigenis would not be involved in the management and control of the project and they agreed to that arrangement. Dr. Evrigenis was a defendant at trial but he prevailed and no issue is presented on appeal with respect to him.

directly or indirectly, the assets of this Partnership for any purpose other than conducting the business of the Partnership, for the full and exclusive benefit of all its Partners." The subsequent amendment to the agreements added: "Notwithstanding any other provision in the Agreement, the General Partner shall not purchase, acquire, or invest any of the assets of the partnership in any other project without unanimous written consent of the Limited Partners."

The Zinfandel partnership agreements also included the following provision: "If any action at law or in equity, including an action for declaratory or injunctive relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs."

Metron Enterprises, Inc., (Metron) is Pappadopoulos's wholly owned corporation. At trial Pappadopoulos testified that he and Metron are really the same entity. The limited partnership agreements contemplated that Metron would serve as project manager in the construction of the apartment complex. For its services Metron was to be paid a fee equal to 5 percent of the total construction costs of the project, as defined in separate agreements between the partnerships and Metron. These agreements provided: "It is acknowledged by all Partners that Metron Enterprises, Inc., is an affiliate of CONSTANTINE PAPPADOPOULOS and all Partners hereby waive any and all conflicts of interest." With respect to compensation of the general partner, the written limited partnership agreements provided: "Other than his share of profits and losses, the General Partner shall not be entitled to any additional compensation for services rendered as General Partner." The Metron construction agreements did not include a provision for attorney fees and costs.

In due course the contemplated apartment complex was completed and sold to an investment group. Following sale of the complex the plaintiffs, who are some of the limited partners in Zinfandel I and Zinfandel II, brought this action to recover sums they allege were improperly received by Pappadopoulos and/or Metron. After trial the court entered a judgment in favor of plaintiffs that included damages for: (1) a portion of a finder's fee paid to Metron on behalf of Pappadopoulos by the buyers of the complex; (2) interest on loans Pappadopoulos made to himself or entities he controlled; (3) the value of lumber the court found to have been misappropriated by Pappadopoulos; (4) sums received by Metron under its construction contract that were based upon expenses that were not properly claimed as construction costs; and (5) the purchase of a forklift that Pappadopoulos purchased with Zinfandel funds and used for his own benefit. In a subsequent proceeding the court determined that plaintiffs are the prevailing parties and

awarded them attorney fees pursuant to the limited partnership agreements. We will note the facts relevant to each of these damage items in connection with our discussion of defendants' challenges to those specific items.

DISCUSSION

I.-VII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VIII.  *Costs*

■  The cost award approved by the court included charges for expert witness fees ($25,891.86), charges for copying documents during discovery ($951.55), Federal Express charges ($368), United States postage expenses ($35.05), telecopy/fax charges ($9.52), and the rental expense for an overhead projector used at trial ($53.25). The court determined that these expenses were properly awarded under the cost and attorney fee clause of the limited partnership agreements, citing the decision in *Bussey* v. *Affleck, supra,* 225 Cal.App.3d at pages 1166 and 1167. (See also *Beasley* v. *Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1422 [1 Cal.Rptr.2d 459].) Defendants contend that *Bussey* was wrongly decided and should not be followed. We agree that *Bussey* was wrongly decided and will modify the cost award to exclude the expenses listed above except the cost of the overhead projector, which we find to have been properly included in the cost award.

■  As a general rule the parties to civil litigation are required to finance their own participation in the litigation. This general rule is subject to numerous exceptions, including those found in Code of Civil Procedure section 1032, subdivision (b), which provides that unless otherwise statutorily prohibited, the prevailing party is entitled to recover "costs." The primary statutory provision with respect to the types of expenses that may or may not be included in a cost award under Code of Civil Procedure section 1032 is found in section 1033.5 of that code.

Subdivision (a) of Code of Civil Procedure section 1033.5 provides a list of expense items which are allowable as costs under section 1032. This list includes ordinary witness fees and the fees of expert witnesses ordered by the court. (§ 1033.5, subd. (a)(7) & (8).)[14] The list of allowable costs also includes attorney fees when authorized by statute or contract. (§ 10335, subd. (a)(10).)

---

*See footnote, *ante,* page 1616.

[14]An ordinary witness who is legally required to attend a civil action or proceeding is entitled to a fee of $35 per day and mileage actually traveled both ways at the rate of $0.20

Subdivision (b) of Code of Civil Procedure section 1033.5 provides a list of items which are not allowable as costs except when expressly authorized by law. Among other things, this latter list includes the fees of experts not ordered by the court, investigation expenses in preparing the case for trial, and postage expenses, telephone charges, and photocopying charges except for exhibits. (§ 1033.5, subd. (b)(1), (2) & (3).)

Subdivision (c) of Code of Civil Procedure section 1033.5 provides general conditions to which costs are subject, including the requirement that the expenses be incurred whether or not paid, that they be reasonably necessary rather than merely convenient or beneficial, and that they be reasonable in amount. (§ 1033.5, subd. (c)(1), (2), & (3).) Subdivision (c)(4) provides that items not otherwise listed in section 1033.5 and items assessed upon application may be allowed or denied in the court's discretion.

██ Before advancing further in our discussion, we will eliminate one cost item from further consideration. Defendants complain of the cost of an overhead projector. The projector was used at trial by the questioned document examiner in order to demonstrate for the court the factors which supported the conclusion that some of the documents presented by Pappadopoulos were falsified, paste-up documents. The cost of the projector reasonably fits within Code of Civil Procedure section 1033.5, subdivision (a)(12), which allows recovery for the cost of models and blowups and photocopies of exhibits which were reasonably helpful to the trier of fact. In any event, the cost of the projector is not an item specifically excluded from a cost award in subdivision (b) of section 1033.5, and thus may properly be awarded in the court's discretion under subdivision (c)(4) of that section.

██ The remaining costs to which defendants object are items which are not allowable as costs under subdivision (b) of Code of Civil Procedure section 1033.5. In *Bussey* v. *Affleck, supra,* 225 Cal.App.3d 1162, the plaintiff brought an action for the balance due on a promissory note that included a provision for the payment of reasonable attorney fees. After the plaintiff prevailed the trial court refused to allow recovery of a number of expenses, including such things as expert witness fees, photocopy charges, and messenger and express mail charges. The Court of Appeal reversed, concluding that where a contract provides for payment of costs and attorney

---

per mile. (Gov. Code, § 68093.) The manner of compensation of expert witnesses designated by the parties is set forth in Government Code section 68092.5, which we will refer to in more detail, *post.* Under Evidence Code section 730, a trial court has the discretion to appoint an expert when it appears that expert evidence is or may be required by the court or by a party. In such a circumstances the expert's compensation in the first instance is apportioned by the court to the parties, and thereafter may be taxed and allowed as costs to the prevailing party. (Evid. Code, § 731, subd. (c); Code Civ. Proc., § 1033.5, subd. (a)(8).)

fees, the court may allow disbursements of counsel as attorney fees if they represent expenses ordinarily billed to a client and are not included in the overhead component of counsel's hourly rate. (*Id.* at p. 1166.) The court reasoned that an agreement for attorney fees and costs would be less than effectual if it did not cover the actual costs of litigation, including disbursements of counsel, and a contrary conclusion would preclude a prevailing party from being made whole. (*Ibid.*)

For the reasons which follow, we are compelled to disagree with the court in *Bussey.* We begin with the major component of the costs to which defendants object, the expert witness fees. As we have noted, Code of Civil Procedure section 1033.5, subdivision (b)(1), provides that the fees of experts not ordered by the court are not allowable as costs unless expressly authorized by law. The statutory provisions dealing with the compensation of experts in general do not provide for the recovery of such expenses in a cost award. The compensation of an expert is, in the first instance, the responsibility of the party who hires the expert. If during discovery proceedings a party designates an expert, then any other party may depose the expert and may require the expert to give testimony before a court, tribunal or arbiter. In that event the party desiring to depose the expert or requiring the expert to testify must pay the expert's fees for the time required for the deposition and/or testimony. (Code Civ. Proc., § 2034, subd. (i); Gov. Code, § 68092.5.) In other respects the compensation of the expert remains the responsibility of the party who hired the expert. (*Ibid.*) Neither Code of Civil Procedure section 2034 nor Government Code section 68092.5 provides for the recovery of expert witness expenses in a cost award.

In numerous specific types of cases the Legislature has seen fit to require the losing party to reimburse the prevailing party for the payment of expert witness fees.[15] And in any case in which the court appoints an expert and apportions the expense to the parties, the prevailing party may recover his or

[15]See for example Business and Professions Code section 8768.5 (mandate action by a licensed land surveyor or a registered civil engineer to compel the filing of a record of survey); Corporations Code section 1305, subdivision (e) (under certain circumstances expert witness fees may be shifted to merging corporations in an action to compel the purchase of dissenting shareholders' interests); Government Code section 8670.56.5, subdivision (e) (under the Lempert-Keene-Seastrand Oil Spill and Response Act a prevailing plaintiff may be awarded the costs of any necessary expert; a prevailing defendant is not allowed expert witness fees but may recover attorney fees if the action was brought in bad faith or solely to harass the defendant); Harbors and Navigation Code section 294, subdivision (e) (same under the Miller Anti-Pollution Act of 1971); Civil Code sections 987, subdivision (e)(4), and 989, subdivision (f)(1) (action to preserve or restore art work); Civil Code section 1745, subdivision (d) (action against dealer in art objects produced in more than one copy); Civil Code former section 7011 (Uniform Parentage Act), now Family Code section 7553; Code of Civil Procedure section 1036 (inverse condemnation action); and Code of Civil Procedure section

her share of the expense as a cost of litigation. (Evid. Code, § 731; Code Civ. Proc., § 1033.5, subd. (a)(8).) When the numerous statutory provisions in which expert witness fees are expressly declared recoverable are considered together with the express prohibition against the inclusion of such fees in a cost award otherwise, the Legislature's intent becomes clear. The Legislature has reserved to itself the power to determine selectively the types of actions and circumstances in which expert witness fees should be recoverable as costs and such fees may not otherwise be recovered in a cost award.

In this respect we find the reasoning of the United States Supreme Court in *West Va. Univ. Hospitals* v. *Casey* (1991) 499 U.S. 83 [113 L.Ed.2d 68 111 S.Ct. 1138] (hereafter *Casey*) to be persuasive. There the high court considered whether a provision in the Civil Rights Act for an award of "a reasonable attorney's fee" (42 U.S.C. § 1988) was sufficient statutory authority to support an award for the expenses of an expert. After noting numerous federal statutory expense-shifting provisions in which Congress expressly provided for the recovery of expert witness fees where that result was intended, the court said: "We think this statutory usage shows beyond question that attorney's fees and expert fees are distinct items of expense. If, as WVUH argues, the one includes the other, dozens of statutes referring to the two separately become an inexplicable exercise in redundancy." (*Casey, supra,* 499 U.S. at pp. 91-92 [113 L.Ed.2d at pp. 78-79].) This reasoning is even more compelling here than it was in *Casey,* since the federal prohibition against awarding expert witness fees as costs was a matter of judicial construction rather than express statutory provision like our Code of Civil Procedure section 1033.5, subdivision (b)(1). (*Casey, supra,* 499 U.S. at pp. 86-87 [113 L.Ed.2d at p. 75].)[16]

In *Bussey* the court attempted to avoid the statutory prohibition against the inclusion of expert witness fees in a cost award by equating expert witness fees and other nonallowable costs of litigation with attorney fees and by concluding that such costs may be included in an award of

1038 (action under the California Tort Claims Act which was not brought in good faith and with reasonable cause).

[16]In *Beasley* v. *Wells Fargo Bank, supra,* 235 Cal.App.3d at pages 1421 and 1422, the court extended its *Bussey* reasoning to an award of attorney fees under Code of Civil Procedure section 1021.5, our statutory "private attorney general" attorney fee rule. In doing so the court rejected the *Casey* reasoning in favor of reliance upon earlier, and no longer valid, decisions of federal trial and intermediate appellate courts. (235 Cal.App.3d at p. 1421.) In our view, the reference to the decisions of these federal courts cannot warrant a disregard of the clear statutory language used by our Legislature in Code of Civil Procedure section 1033.5, subdivision (b)(1). In any event, we are not here concerned with private attorney general fee awards and with respect to contractual attorney fee awards we find the *Casey* reasoning to be persuasive.

contractual attorney fees. We cannot adhere to that approach. In the absence of some specific provision of law otherwise, attorney fees and the expenses of litigation, whether termed costs, disbursements, outlays, or something else, are mutually exclusive, that is, attorney fees do not include such costs and costs do not include attorney fees. (See *Estate of Olmstead* (1898) 120 Cal. 447, 454 [52 P. 804]; *Gronfier, Jeune & Co.* v. *Minturn* (1855) 5 Cal. 492.) This is too well established in too many different contexts to be doubted. For example, in *Gronfier, Jeune & Co.* v. *Minturn, supra,* 5 Cal. at page 492, a contractual provision that provided for the recovery of costs and attorney fees not to exceed 5 percent of the sum due on the contract was held to limit only the attorney fees and not allowable costs. It has been held that a statutory provision which precludes an award of costs does not preclude a successful litigant from recovering contractual attorney fees. (*Cirimele* v. *Shinazy* (1954) 124 Cal.App.2d 46, 51-52 [268 P.2d 210]; *Stubblefield* v. *Fickle* (1954) 123 Cal.App.2d 325, 326-327 [266 P.2d 808].) It has long been held that in the absence of a special agreement to the contrary, in addition to attorney fees a client must repay an attorney for all outlays in the payment of the expenses of carrying on litigation. (*Cooley* v. *Miller & Lux* (1909) 156 Cal. 510, 525-526 [105 P. 981]; *Tasker* v. *Cochrane* (1928) 94 Cal.App. 361, 366 [271 P. 503].) And an attorney's agreement to bear the expenses of litigation has long been the subject of ethical concerns. (See Annot., Attorneys—Client's Expenses (1966) 8 A.L.R.3d 1155.)[17] It is settled that only an attorney is entitled to receive attorney fees. (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 918 [69 Cal.Rptr. 612, 442 P.2d 692]; *Hardy* v. *San Fernando Valley C. of C.* (1950) 99 Cal.App.2d 572, 576 [222 P.2d 314].) And it is a violation of an attorney's ethical duties to share a legal fee directly or indirectly with a person who is not a lawyer. (Rules Prof. Conduct, rule 1-320(A).) In view of the clear distinction that has always been drawn between attorney fees and the expenses of litigation, we cannot disregard the Legislature's express prohibition against the inclusion of expert witness fees in a cost award by equating such expenses with attorney fees.

The *Bussey* court sought to justify its conclusion with the observation that "[a]n agreement for attorney's fees and costs would be less than effectual if

---

[17]The rules with respect to advancing the expenses of litigation have evolved over time. It was formerly considered unethical for an attorney to agree to advance the costs of litigation if reimbursement was made contingent upon the outcome. (See Note, *Loans to Clients For Living Expenses* (1967) 55 Cal.L.Rev. 1419, 1440-1441.) Rule 4-210 of the California Rules of Professional Conduct now permits an attorney to advance the costs of prosecuting or defending a claim and also permits repayment to be made contingent on the outcome of the matter. Full discussion of the evolution of this standard is beyond the scope of the issue here. We cite this matter only as illustrative of the distinction our law has always made between attorney fees and the expenses of litigation.

it could not cover the actual costs of litigation, including disbursements of counsel, and a contrary conclusion would mean that the party prevailing on the contract could never be made whole." (225 Cal.App.3d at p. 1166.)

We find this reasoning unpersuasive for two reasons. First, this is a policy consideration and as such is a matter addressed to the Legislature. In the absence of constitutional compulsion, and none appears here, we may not reject the Legislature's view of appropriate policy by ignoring clear statutory language. Second, we are here concerned with the items of expense which may be included in a cost award after judgment and are not concerned with contractual remedies. Special contract damages are subject to pleading and proof in the main action and cannot be recovered by mere inclusion in a memorandum of costs. (*Genis* v. *Krasne, supra,* 47 Cal.2d at p. 246; *Cirimele* v. *Shinazy, supra,* 124 Cal.App.2d at p. 52; *Stubblefield* v. *Fickle, supra,* 123 Cal.App.2d at p. 327.) As an exception to this rule, the Legislature has chosen to provide for the recovery of contractual attorney fees in a cost award. (Civ. Code, § 1717; Code Civ. Proc., § 1033.5, subd. (a)(10)(A); see Stats. 1990, ch. 804, § 2.) But the Legislature has declined to adopt that procedure for the recovery of expert witness fees. (Code Civ. Proc., § 1033.5, subd. (b)(1).) Accordingly, assuming expert witness fees may be recovered under a contractual provision, they must be specially pleaded and proven at trial rather than included in a memorandum of costs. Since plaintiffs did not specially plead and prove their right to recover expert witness fees under an appropriate provision of their contract, they were not entitled to such fees and it was error to include such fees in the cost award.[18]

■ Our conclusion with respect to the expenses of copying documents, Federal Express and postage charges, and telecopy/fax charges must be the same. Although such expenses are more rarely shifted to the losing party by express statutory provision, they, like expert witness fees, are expressly disallowed as costs unless expressly permitted by law. (Code Civ. Proc.,

---

[18]In *Bussey* the parties' contract included a provision of greater breadth than a general "costs and attorney fees" provision. Specifically, the *Bussey* promissory note required the defendants " 'to pay all costs and expenses of collection including reasonable attorneys' fees.' " (225 Cal.App.3d at p. 1164.) Perhaps because the *Bussey* plaintiffs did not specially plead and prove their right to expert witness fees and other expenses under that provision, the Court of Appeal did not rely upon the breadth of the contractual provision and instead concluded that any contractual provision for the payment of costs and attorney fees is sufficient to permit expert witness fees and other expenses to be included in a cost award. (*Id.* at p. 1166.) To the extent the *Bussey* court concluded that a contractual provision for attorney fees is sufficient in itself to support an award for expert witness fees and that recovery of such expenses may be had in a cost award, we disagree and decline to follow that decision. It is unnecessary here to consider whether recovery may be permitted, and the contractual language that would be required to support recovery, of litigation expenses that are not allowable as costs when such damages are specially pleaded and proven at trial.

§ 1033.5, subd. (b)(1), (2) & (3).) We perceive no more reason to ignore this statutory provision with respect to these expenses than we do with respect to expert witness fees.

## CONCLUSION

The judgment is modified to exclude plaintiff Karsant from recovery of the portion of the damages relating to the finder's fee and to reduce the amount of the damages for recovery of the finder's fee to $31,150. The award of costs is modified to delete expert witness fees ($25,891.86), document copying charges ($951.55), Federal Express charges ($368), United States postage expenses ($35.05), and telecopy/fax charges ($9.52). As modified and in all other respects the judgment is affirmed. All parties shall bear their own costs on appeal.

Davis, J., and Scotland, J., concurred.