[No. A085802. First Dist., Div. Two. Jan. 24, 2000.]

FIRST NATIONWIDE BANK et al., Cross-complainants and Respondents, v.
MOUNTAIN CASCADE, INC., Cross-defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.A and III.B.

**COUNSEL**

Knopfler & Robertson, Richard Capella and Deborah Broom for Cross-defendant and Appellant.

Senn Palumbo Meulemans, Kevin J. Senn and Michael J. Kerins for Cross-complainants and Respondents.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

After entering a judgment in favor of respondents in this construction defect dispute, the trial court granted respondents' request for prejudgment interest, expert fees, and attorney fees. Appellant Mountain Cascade, Inc. (Mountain Cascade) contends these postjudgment awards were error, arguing: (1) the trial court should have applied recent case law retroactively to bar respondents' award of prejudgment interest; (2) the trial court should have deducted respondent First Nationwide Bank's (FNB) attorney fees from the total attorney fee award because it was not entitled to recover fees under the contractual attorney fees provision; and (3) the trial court should have refused to award expert witness fees to respondents because they are expressly disallowed by statute.

We disagree with Mountain Cascade's first contention, but we are persuaded by its second and third points. Accordingly, we affirm the prejudgment interest award and reverse the award of attorney fees and expert witness fees. The attorney fees matter is remanded to the trial court with instructions to apportion the fees between FNB and Southampton Company, and award attorney fees solely to the latter in a manner consistent with this opinion.

## II. BACKGROUND

FNB owned land in Benicia, California, that was the site for a subdivision project called The Villas. The developer of the project was respondent

Alma Associates doing business as Southampton Company (Southampton). Southampton entered into a contract with Mountain Cascade to install a storm drain and a corporation stop[1] at The Villas. Under the heading "Progress Payments," this contract contained the following provision: "Based upon applications for payment submitted to the Owner by the Contractor, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below . . . . Should Owner fail to pay Contractor the monies called for under this agreement when they become due, then such unpaid sum shall bear interest at the maximum legal rate until payment in full has been received. In the event that it becomes necessary for Contractor, by lien or other action, to enforce collection of any amount, payable by Owner hereunder, Owner agrees to pay Contractor all necessary expenses, including attorney's fees, incurred by Contractor in the institution and prosecution of such action."

After the project was completed, the owners of The Villas townhouses filed suit against FNB and Southampton alleging damage to their units caused by severe differential soil settlement. FNB repurchased the units from the owners, and arranged to have the soil reengineered and recompacted so that new townhouses could be constructed on the site. Thereafter, the homeowners settled their claims with FNB, and assigned any further rights they might have to recover under their sales agreements to FNB.

On November 22, 1993, Southampton filed a cross-complaint against Mountain Cascade and certain other contractors, asserting causes of action for express indemnity, breach of contract, implied contractual indemnity, breach of implied warranties, equitable indemnity, contribution, declaratory relief, breach of warranty, and negligence. The next day, FNB filed a cross-complaint against the same entities asserting claims for comparative equitable indemnity and declaratory relief.

Approximately three years before trial, FNB and Southampton decided to employ the services of the same counsel to prosecute their cross-complaints.

On May 22, 1998, the jury returned a special verdict in favor of respondents based on the following theories: (1) negligence; (2) breach of contract, and (3) breach of warranty. The jury awarded respondents $1,875,000 in damages, and determined that Mountain Cascade was responsible for 97 percent of these damages. The remaining 3 percent was apportioned to another cross-defendant that is not a party to this appeal.

On May 26, 1998, judgment on the cross-complaints was entered in favor of respondents. The judgment awarded costs to respondents in an amount to

---

[1] A corporation stop is a device that cuts off the water supply from the main water service line.

be determined after respondents submitted a memorandum of costs. On June 9, 1998, respondents filed a timely memorandum of costs, which included a request for prejudgment interest. The next day, *North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824 [76 Cal.Rptr.2d 743] (*North Oakland*) appeared in the advance sheets of the legal newspaper, the Daily Journal. In *North Oakland*, a panel from this division determined that a cost bill is not the appropriate vehicle for requesting prejudgment interest. (*Id.* at p. 830.)

By letter dated June 11, 1998, and served on all parties, respondents requested clarification and instructions from the trial court regarding the impact of *North Oakland* on their request for prejudgment interest. The court responded on June 26, 1998, stating that, in light of the absence of any correspondence or objection from Mountain Cascade's counsel, it had decided to accept respondents' request for prejudgment interest despite their failure to follow the procedure announced in *North Oakland*. It also advised the parties that if there was an objection "to the interest as calculated, an appropriate motion may be filed and the court will entertain arguments on all sides of the question."

On July 7, 1998, Mountain Cascade filed a motion to tax costs in which it moved to strike the request for prejudgment interest. On July 22, 1998, respondents filed a motion to recover attorney fees and expert costs associated with the litigation. The court denied Mountain Cascade's motion to tax costs on December 10, 1998, and granted respondents' motion for attorney fees and expert costs. The court entered an amended judgment awarding respondents $345,126 in attorney fees, $561,416.60 in prejudgment interest, $59,111.27 in expert fees, and $25,092 in court costs. This appeal challenging the award of attorney fees, prejudgment interest, and expert fees followed.

### III. Discussion

A., B.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### C. *Expert Fees*

■ Mountain Cascade contends the trial court erred by awarding expert witness fees to respondents. We agree.

Under section 1033.5, subdivision (b)(1), of the Code of Civil Procedure parties may not recover expert witness fees as costs "except when expressly

---

*See footnote, *ante*, page 871.

authorized by law." Such express authorization exists in instances when the expert is court appointed (Code Civ. Proc., § 1033.5, subd. (a)(8)) or when the judgment awarded is lower than a rejected settlement offer (Code Civ. Proc, § 998, subds. (c) & (d)).

Respondents argue that, although this expert witness fee award was not expressly authorized by statute, it was nevertheless proper under the precedent set forth in *Bussey v. Affleck* (1990) 225 Cal.App.3d 1162 [275 Cal.Rptr. 646] (*Bussey*). In *Bussey*, Division Four of this district held that when a contract includes an attorney fees and costs provision, the court may award disbursements of counsel to the prevailing party as attorney fees pursuant to a postjudgment cost memorandum as long as these expenses are ordinarily billed separately to the client. (*Id.* at p. 1166.) The *Bussey* court reasoned that to hold otherwise would impair the effectiveness of contractual fees and costs provisions and prevent the prevailing party from being made whole. (*Ibid.*) The court concluded "The provisions of section 1033.5 do not dictate a contrary result. . . . Insofar as the disbursements are for [expert witness fees] that are not allowable under section 1033.5, subdivision (b), unless 'expressly authorized by law,' the requisite authority is found in the statutes that authorize contracting parties to stipulate for the payment of attorney[] fees and costs. (See Code Civ. Proc., § 1021 [leaving 'the measure and mode of compensation of attorneys' to 'the agreement, express or implied, of the parties']; Civ. Code, § 1717 [prevailing party on contract providing for attorney[] fees and costs entitled to reasonable attorney[] fees 'in addition to other costs']; and cf. *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 274 [81 Cal.Rptr. 849, 461 P.2d 33] [cost award to be governed by prevailing party statute where contract provision was 'inapplicable'].)"[5] (225 Cal.App.3d at p. 1167.)

The holding in *Bussey* was convincingly criticized by a panel from the Third District in *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616 [28 Cal.Rptr.2d 878] (*Ripley*) as an unwarranted departure from the plain language of Code of Civil Procedure section 1033.5, subdivision (b)(1). The *Ripley* court reasoned "In *Bussey* the court attempted to avoid the statutory prohibition against the inclusion of expert witness fees in a cost award by equating expert witness fees and other nonallowable costs of litigation with attorney fees and by concluding that such costs may be included in an award of contractual attorney fees. We cannot adhere to that approach. In the absence of some specific provision of law otherwise, attorney fees and the

---

[5]The Third District extended the *Bussey* reasoning to attorney fees awards in cases brought under a private attorney general theory pursuant to section 1021.5. (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1420-1422 [1 Cal.Rptr.2d 459]. *Beasley* is factually distinguishable because this action was not brought under such a theory.

expenses of litigation, whether termed costs, disbursements, outlays, or something else, are mutually exclusive, that is, attorney fees do not include such costs and costs do not include attorney fees. [Citations.]" (23 Cal.App.4th at pp. 1625-1626.)

To the extent that the *Bussey* court bolstered its conclusions by pointing to the parties' contractual provision covering both attorney fees *and* costs, the *Ripley* court rejected this reasoning. The court explained: "[W]e are here concerned with the items of expense which may be included in a cost award after judgment and are not concerned with contractual remedies. Special contract damages are subject to pleading and proof in the main action and cannot be recovered by mere inclusion in a memorandum of costs. [Citations.] As an exception to this rule, the Legislature has chosen to provide for the recovery of contractual attorney fees in a cost award. (Civ. Code, § 1717; Code Civ. Proc., § 1033.5, subd. (a)(10)(A); see Stats. 1990, ch. 804, § 2.) But the Legislature has declined to adopt that procedure for the recovery of expert witness fees. (Code Civ. Proc., § 1033.5, subd. (b)(1).) Accordingly, assuming expert witness fees may be recovered under a contractual provision, they must be specially pleaded and proven at trial rather than included in a memorandum of costs. Since plaintiffs did not specially plead and prove their right to recover expert witness fees under an appropriate provision of their contract, they were not entitled to such fees and it was error to include such fees in the cost award." (*Ripley, supra,* 23 Cal.App.4th at p. 1627.) Because of this failure in the plaintiffs' pleading and proof, the *Ripley* court concluded "It is unnecessary here to consider whether recovery may be permitted, and the contractual language that would be required to support recovery, of litigation expenses that are not allowable as costs when such damages are specially pleaded and proven at trial." (*Id.* at p. 1627, fn. 18.)

In *Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436, 446-447, footnote 5 [71 Cal.Rptr.2d 452, 950 P.2d 567] (*Davis*), our Supreme Court held that the prevailing party in a Fair Employment and Housing Act action was not entitled to recover expert witness fees for privately retained experts. The high court acknowledged the intradistrict conflict evidenced by *Bussey* and *Ripley*, but declined to resolve the issue. Instead, the court noted, "Our present analysis, which involves statutory construction, may not be dispositive in a matter involving the effect of a contractual agreement for shifting litigation costs, which turns on the intentions of the contracting parties." (*Ibid.*)

Recently, a panel from the Fifth Division of this district refused to follow *Bussey* for "all the reasons stated in *Ripley*, . . . ." (*Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1154 [82

Cal.Rptr.2d 143] (*Cloud*).) Based on "the Legislature's express prohibition against inclusion of expert witness fees within a cost award (Code Civ. Proc., § 1033.5, subd. (b)(1)" (*ibid.*), the *Cloud* court concluded it was error to include expert witness fees in a postjudgment award of attorney fees and costs under Civil Code section 1717.

Respondents urge us to follow *Bussey* and reject *Ripley* and *Cloud*. Alternatively, they argue that the expert witness fee award was proper either as an element of the attorney fees award, or under the broad language of the contract, which authorized the recovery of all "necessary expenses," as well as attorney fees. We disagree.

The *Bussey* court's conclusion that expert witness fees may be included in an award of contractual attorney fees was persuasively criticized in *Ripley*. We join the *Ripley* and *Cloud* courts in holding that *Bussey* was incorrectly decided. Costs and attorney fees are mutually exclusive, and the statutory prohibition contained in Code of Civil Procedure section 1033.5, subdivision (b)(1), cannot be avoided by characterizing costs as an element of attorney fees. (See also *West Virginia Univ. Hospitals, Inc. v. Casey* (1991) 499 U.S. 83 [111 S.Ct. 1138, 113 L.Ed.2d 68] [statutory authorization for award of attorney fees in a civil rights action does not include award of expert witness fees].)

As for respondents' second argument, we follow *Ripley* and conclude that the expert witness fees award in this case were not properly awarded under the "necessary expenses" portion of the contract because such "[s]pecial contract damages are subject to pleading and proof in the main action and cannot be recovered by mere inclusion in a memorandum of costs. [Citations.]" (*Ripley*, *supra*, 23 Cal.App.4th at p. 1627.) Before judgment, Southampton made no attempt to plead or prove its entitlement to expert witness fees under this contractual theory. Moreover, FNB failed to assert any contractual claims whatsoever, thereby foregoing any entitlement to the reciprocal application of the attorney fees and necessary expenses contractual provision.

As the *Ripley* court explained, "[T]he Legislature has chosen to provide for the recovery of contractual attorney fees in a cost award (Civ. Code, § 1717; Code Civ. Proc., § 1033.5, subd. (a)(10)(A); see Stats. 1990, ch. 804, § 2.)," but "declined to adopt that procedure for the recovery of expert witness fees. (§ 1033.5, subd. (b)(1).)" (*Ripley*, *supra*, 23 Cal.App.4th at p. 1627.) While Code of Civil Procedure section 1033.5, subdivision (b)(1)'s prohibition on the recovery of expert witness fees in a postjudgment cost award does not demonstrate "any legislative intent to prevent sophisticated parties from freely choosing a broader [contractual] standard" governing the recovery of expert witness fees (*Arntz Contracting Co. v. St. Paul*

*Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 492 [54 Cal.Rptr.2d 888]), plaintiffs proceeding under such a theory must specially plead and prove their right to recover expert witness fees under an appropriate provision of their contract. (*Ripley, supra*, 23 Cal.App.4th at p. 1627.)

The reasons for this pleading and proof requirement are readily apparent. As our Supreme Court observed in *Davis*, the proper interpretation of a contractual agreement for shifting litigation costs is a question of fact that "turns on the intentions of the contracting parties." (*Davis, supra*, 17 Cal.4th at p. 447, fn. 5.) Where the contractual provision is ambiguous, extrinsic evidence may be warranted. Adverse parties must be put on notice through the pleadings that this contractual theory will be asserted, and the issue must be submitted to the trier of fact for resolution pursuant to a prejudgment evidentiary proceeding, not a summary postjudgment motion. Because Southampton and FNB waited until well after the rendition of judgment to assert their theory that they were entitled to recover expert witness fees under the "necessary expenses" provision of the contract, and the "necessary expenses" provision did not apply reciprocally to FNB, they were not entitled to such fees and it was error to include such fees in the cost award. Accordingly, we conclude the $59,111.27 expert fee award was erroneous, and must be reversed.

## IV. DISPOSITION

The $561,416.60 award of prejudgment interest is affirmed. The $59,111.27 award of expert fees is reversed. The $345,126 award of attorney fees in favor of FNB and Southampton is reversed, and the matter is remanded to the trial court. On remand, the trial court shall apportion the fees between FNB and Southampton, and award attorney fees solely to Southampton in a manner consistent with this opinion.

Kline, P. J., and Lambden, J., concurred.