Filed 7/7/16  Kwok v. Kwong CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>

JENNIFER SHUK-HAN KWOK et al.,

    Plaintiffs and Appellants,

v.

JEANNE KWONG et al.,

    Defendants and Respondents.

</td><td>

A143795

(San Francisco City & County
Super. Ct. No. CGC-14-537241)

</td></tr>
</table>

**I.**

**INTRODUCTION**

The current appeal arises out of an ongoing dispute among the parties over the estate of Stanley Kwong (Stan).[1]  In the original action, *Kwong I*, Stan's mother Lau Kwong (Lau) and his brother Larry Kwong (Larry) sought an accounting of Stan's estate relying on Stan's financial records in the possession of Stan's surviving spouse Jennifer Shuk-Han Kwok and Stan's company California Financial Mortgage Corporation (California Financial) (referred to collectively and in the singular form as Kwok).  After the trial court issued a final judgment in *Kwong I*, Kwok filed the current complaint, *Kwong II*, alleging four causes of action against Stan's two surviving siblings based on their alleged theft of Stan's financial records.  The trial court granted respondents' demurrers to the current complaint without leave to amend, finding Kwok's claims constituted spoliation of evidence, and there was no independent legal cause of action

---

[1]  To avoid confusion, we refer to members of the Kwong family by their first names.  No disrespect is intended.

available for that conduct. Kwok contends her claims of trespass and conversion are based upon the theft of documents and are unrelated to the prior lawsuit over Stan's estate. We find no error and affirm.[2]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Stan died in 2009, leaving Kwok as his widow. Jeanne and Larry are Stan's two surviving siblings. Stan owned California Financial, which was transferred to Kwok after he died. During his lifetime, Stan managed the assets of his mother, Lau. At Stan's death, he left his entire estate to his wife, Kwok, and nothing to Lau. Litigation over the division of Stan's estate culminated in a trial in March 2012 in *Kwong I*. (*Kwong v. Kwok* (Super. Ct. S.F. City and County, 2010, No. CGC-10-499028).)

### A. *Kwong I*[3]

In *Kwong I*, Lau brought an action against Stan's estate. Stan managed all of Lau's finances over a period of nearly 30 years, and Lau's assets were used for the down payment on two properties and for a share of the down payment on a third property. Lau sought an accounting of Stan's management of her property, and to recover title to the three properties. Larry also sought an accounting on behalf of his brother Harry's estate, which Stan also managed. Lau and Larry filed a second amended complaint which alleged causes of action to establish a resulting trust, for an accounting, constructive trust, conversion, financial elder abuse, and to quiet title.

---

[2] On appeal Kwok does not contend that the trial court erred in not granting leave to amend.

[3] The parties requested the trial court take judicial notice of the pleadings, judgment and records in *Kwong I*. They similarly filed a request for judicial notice here. Finding these documents properly subject to judicial notice, we grant the request. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 457, fn. 2 (*Rosen*), citing Evid. Code, §§ 452, subd. (d), 459; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564–1566 [judgments, verdicts, and other court documents are properly subject to judicial notice for purposes of establishing the findings and decisions made in an earlier action].)

The trial court found Lau had established a loan relationship with Stan and held Lau and Larry were entitled to interest on the loans made to Stan, proceeds from the property rents, and proceeds from the various refinancings, all with compound interest. In January 2014, the court awarded more than $4.5 million to Lau and more than $196,000 to Larry. A decision affirming the trial court's judgment in *Kwong I* was issued by this court in February 2016. (*Estate of Kwong* (Feb. 24, 2016, A140437 & A141290) [nonpub. opn.].)

### 1. Cross-complaints

In *Kwong I*, Kwok filed a cross-complaint against Jeanne alleging indemnity, contributory and declaratory relief. Posttrial, but before judgment was issued, Kwok sought to amend her cross-complaint to allege causes of action for trespass and conversion.

The proposed amended cross-complaint in *Kwong I* alleged that Jeanne trespassed onto two properties owned by Stan on Geary Street and Jones Street in San Francisco. California Financial's offices were located at the Geary Street property. The cross-complaint alleged Jeanne "rummaged through and damaged" documents and records belonging to Stan, California Financial, and Kwok taken from both locations.

The documents were the financial and historical records of Stan's estate and California Financial. These documents were "necessary to perform a complete accounting for the Estate of Stanley Kwong." The cross-complaint alleged that the trespass prevented Kwok from performing a full accounting and required her to incur substantial costs and expenses to recreate an accounting. Kwok requested a judgment for all costs and expenses of performing the accounting for Stan's estate.

Kwok also sought to file a separate cross-complaint against Lau and Larry. It alleged Lau and Larry removed records and documents from the Geary Street property, and Larry removed documents from the Jones Street property. Like the proposed cross-complaint against Jeanne, it alleged that Kwok could not perform a full accounting for the estate and incurred substantial costs.

Jeanne, Larry, and Lau opposed the motion to amend. Jeanne argued the amendment was untimely, coming nine months after the end of the trial and raising issues that were known to Kwok years earlier. Kwok knew about the alleged missing documents prior to trial, as was evidenced by her deposition testimony in 2011. Kwok, however, never raised the trespass or alleged theft during discovery or trial. Jeanne also argued the motion to amend was improperly served and barred by the statute of limitations.

Similarly, Lau and Larry argued the motion to amend should be denied because there was an unreasonable delay in filing it, and they would be prejudiced by the amendment. They contended that Kwok should have moved to amend prior to trial because she knew of the alleged trespass and conversion in 2011, more than seven months prior to trial, and then waited until nine months after the conclusion of the trial to amend her cross-complaint. The proposed new allegations related to the accounting action tried by the court and were therefore untimely, and Kwok should not be allowed "a second bite at the apple." Lau and Larry further argued that the claims were barred by the statute of limitations.

The court held a hearing on the motion to amend the cross-complaints that was not reported, and later issued an order denying Kwok's motion to amend her cross-complaints against Jeanne, Larry, and Lau. The order simply stated: "Upon full consideration of the pleadings in support and opposition to the motion and the arguments of counsel," the motion is denied.

**B.    *Kwong II***

After the court issued a final judgment in *Kwong I*, Kwok filed the current complaint alleging four causes of action against Jeanne and Larry: trespass to land, trespass to chattels, conversion, and breach of fiduciary duty. The complaint alleged that Jeanne and Lau "broke into Cal Financial Property, and took certain electronic and paper documents." It alleged that Kwok became aware of the missing documents in August 2009, but believed that Jeanne had later returned all of them. In March 2012, during the

4

trial in *Kwong I*, Kwok became aware that there were additional missing documents and records.

The complaint also alleged that Larry and Jeanne took documents, a bicycle, and personal property from the Jones Street property and fraudulently concealed the theft. When Kwok demanded return of the documents, Larry produced eight compact discs containing over 100,000 records that were out of order and "mixed together." The complaint alleged that as a result of the trespass, Kwok had to retain a forensic accountant at a cost of approximately $370,000 to reconstruct the documents.

Jeanne filed both a demurrer to the complaint and a motion to strike. In her motion to strike, she argued the complaint violated the rule against splitting causes of action and the one final judgment rule. She argued that Kwok had attempted to amend her cross-complaint in *Kwong I* to add the causes of action alleged in the current complaint and the motion was denied and the cross-complaint was later dismissed. Jeanne argued the current action "is based on the same injury and same set of facts" as the proposed amended cross-complaint in *Kwong I* and the court should strike the complaint as a sham pleading.

As for the demurrer, Jeanne argued that Kwok's claims sought recovery for spoliation of evidence and were barred because there was no cognizable independent legal cause of action for that conduct. Larry also filed a demurrer to the complaint arguing Kwok's claims amounted to spoliation of evidence and there was no tort remedy available. With both demurrers, Larry and Jeanne requested the trial court to take judicial notice of the complaint and cross-complaints in *Kwong I* as well as the court's order.

The court held two hearings on the dismissal of the complaint. The first was on July 23, 2014. At the first hearing, Kwok argued her claim did not amount to spoliation of evidence because the taking of documents did not result in her losing the prior lawsuit, or impact that litigation except to have the effect of driving up the costs of her expert witness, which could not be recovered as part of the earlier litigation. She argued the expert expense would have been incurred even without the litigation, and resulted from the disarray of the documents upon their return.

5

In response to Larry's counsel's comment that the allegations amounted to a claim of spoliation, the court stated that on the issue of liability—not to steal or destroy the documents—"it sure looks like spoliation," noting that unlike art or jewelry, the documents here did not have intrinsic value other than as evidence in the lawsuit.

After additional briefing, the court held a second hearing on October 30, 2014. The court stated that it planned to sign the order on the demurrer without leave to amend "because I think it is an attempt to bring a cause of action for spoliation." Jeanne argued the court also should strike the complaint because it was contrary to the probate court's ruling, it violated the rule against splitting a cause of action, and the one final judgment rule.

As to the motion to strike, Kwok argued the allegations in the cross-complaint in *Kwong I* and the current complaint in *Kwong II* were not the same. In *Kwong I*, the theory of the cross-complaint was that the documents were stolen and returned in a disorganized fashion requiring a forensic accountant to reconstruct them at great cost. In *Kwong II*, the complaint sought the cost needed to use the documents to account for Stan's estate—a purpose independent of the *Kwong I* litigation. For the first time, Kwok added that the stolen documents included a deed that had been recorded by Jeanne. The requested damages were 50 percent of the value of the property recorded on that deed as well as the costs for the forensic accountant, although there was no mention of the deed in the complaint filed in *Kwong II*.

The court issued an order granting the demurrer to the complaint without leave to amend, and finding the motion to strike the complaint was moot.

## III.

## DISCUSSION

### A.  *Standard of Review*

"As this division held in *Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609: ' "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all

6

material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citation.]" [Citation.]' (*Id.* at pp. 616–617.)" (*Service Employees Internat. Union, Local 1021, AFL-CIO v. County of Sonoma* (2014) 227 Cal.App.4th 1168, 1172-1173.)

### B. *Spoliation of Evidence*

"Spoliation occurs when evidence is destroyed or significantly altered or when there is a failure to preserve property for another's use as evidence in current or future litigation. [Citation.]" (*Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1458.) To prove spoliation, a party must demonstrate that documents or records were destroyed or altered intentionally or negligently, and that the documents were relevant to the litigation. (*Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 682.)

In an action brought on behalf of a child injured at birth against the hospital for intentionally destroying evidence relevant to the malpractice lawsuit, our Supreme Court held that there was no independent tort of spoliation of evidence. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 4 (*Cedars-Sinai*).) "[W]e conclude that when the alleged intentional spoliation is committed by a party to the underlying cause of action to which the evidence is relevant and when the spoliation is or reasonably should have been discovered before the conclusion of the underlying litigation, it is preferable to rely on existing nontort remedies rather than creating a tort remedy." (*Ibid.*) "[A] tort remedy would impose a number of undesirable social costs, as well as running counter to important policies against creating tort remedies for litigation-related misconduct." (*Ibid.*) The court noted that there are numerous nontort remedies to punish and deter intentional spoliation of evidence (*id.* at p. 5), and in a substantial portion of cases the

7

harm would be uncertain. (*Id.* at p. 13.) "[T]here will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor." (*Id.* at p. 14.)

The *Cedars-Sinai* court recognized the need for a policy against creating "derivative" tort remedies for misconduct occurring in the course of litigation. "Creating a tort remedy for spoliation would spawn 'endless litigation' in which a dispute could never be finally resolved, because an unsuccessful litigant could always file a new action claiming that evidence which might have affected the outcome of the original action had been destroyed by another litigant or a third party. . . ." (*Forbes v. County of San Bernardino* (2002) 101 Cal.App.4th 48, 56, citing *Cedars-Sinai*, *supra*, 18 Cal.4th at pp. 8–11.) A number of nontort remedies exist to deter the destruction or alteration of evidence including (1) evidentiary sanctions such as instructing the jury that the unavailable evidence was unfavorable to the party who suppressed it; (2) discovery sanctions including terminating sanctions; (3) state bar discipline against any attorney involved in the spoliation of evidence; and (4) criminal penalties. (*Cedars-Sinai*, *supra*, 18 Cal.4th at pp. 11–13.)

Later courts similarly have refused to recognize a cause of action for either first-party or third-party negligent spoliation based on the same policy considerations discussed in *Cedars-Sinai.* (See, e.g., *Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1089–1090, fn. omitted ["We therefore conclude there is no tort remedy for first party or third party negligent spoliation of evidence."].)

Neither party disputes that respondents had a duty not to destroy or alter the financial records that were taken from the Geary and Jones Street properties without Kwok's consent. Instead, their dispute centers on whether an allegation of *theft* of documents from another, as opposed to destruction or alteration of one's own records, impacts the spoliation analysis, and whether the damages alleged are subsumed by the result in the prior lawsuit.

Kwok alleges that, unlike a traditional claim based on spoliation of evidence, respondents did not simply violate a duty to preserve or not to alter evidence, but instead

8

they stole her documents.  In essence, she asserts that a spoliation claim cannot be based on theft: "[N]o spoliation case has ever held that stealing evidence in the possession of another party is the same as withholding or destroying one's own."

Respondents argue that the analysis is the same whether the documents were stolen, lost, destroyed, or altered.  A spoliation claim can be based broadly on a duty to preserve evidence.  Larry argues spoliation is based on the claims that respondents "significantly altered" the documents by shuffling them or destroying the evidence by failing to return it.  "Spoliation of evidence means the destruction or significant alteration of evidence or the failure to preserve evidence for another's use in pending or future litigation.  [Citation.]"  (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223 (*Williams*); see also *Cedars-Sinai*, *supra*, 18 Cal.4th at p. 8 [spoliation involves a duty to avoid the "intentional destruction of evidence relevant to the lawsuit"].)

While no court appears to have addressed directly whether the theft of documents can constitute spoliation of evidence, the rationale employed by *Rosen*, *supra*, 193 Cal.App.4th is instructive as that case did not limit spoliation to the destruction or alteration of one's *own* materials, and extended the limitation to unavailability of evidence resulting from theft.

In *Rosen*, Robin Rosen was in an auto accident with a Los Angeles Metropolitan Transit Authority (MTA) bus.  As a result of the accident, she had a stroke that paralyzed one side of her body.  (*Rosen*, *supra*, 193 Cal.App.4th at p. 456.)  Dr. Kurt Openshaw performed an angiogram on Rosen at St. Joseph's Hospital, which showed the accident tore Rosen's carotid artery, leading to the stroke.  (*Ibid.*)  The complaint alleged Dr. Openshaw and the MTA attorney "stole" the angiogram, which prevented Rosen from demonstrating at trial that the accident caused her injury.  (*Id.* at pp. 456-457.)  After the jury returned a verdict in favor of MTA, Rosen filed an action against the lawyer, the hospital, and Dr. Openshaw alleging causes of action for conversion, breach of fiduciary duty, violation of privacy, and intentional infliction of emotional distress.  (*Id.* at p. 457.)  The defendants filed a demurrer which was sustained by the trial court based on its finding the claims were for spoliation of evidence.  (*Ibid.*)

9

On appeal, the court held the "trial court disregarded the labels Rosen used to describe her first four causes of action and found her allegations amounted to spoliation of evidence claims barred by *Cedars-Sinai* . . . . We agree." (*Rosen*, *supra*, 193 Cal.App.4th at p. 462.) Rosen alleged that Dr. Openshaw engaged in the intentional spoliation of evidence by concealing the angiogram to impact Rosen's case. Rosen failed to take advantage of the nontort remedies available to her during the MTA litigation. (*Id.* at p. 464, fn. 4.)

Respondents argue the complaint in *Rosen* alleged conversion, and because Rosen alleged MTA's attorney stole the angiogram, the holding in *Rosen* supports a finding of spoliation here. While Kwok points out that *Rosen* did not directly address the theft of relevant evidence, its rationale, as well as the underlying facts in that case, support respondents' position. The complaint in *Rosen* included a cause of action for conversion, a form of theft. (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208 [" ' "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages' " '].) Thus, the *Rosen* court's holding did not turn on how the evidence was destroyed or altered—whether by the theft of the angiogram or by other alteration, or concealment by the defendants. It concluded that the limitation on claims based on spoliation of evidence applied to the alleged acts by the wrongdoers in that case.

Similarly, our conclusion here need not rest on how respondents came to possess the documents, but on their duty not to deprive Kwok of her access to them. The heart of Kwok's complaint is that respondents intentionally took the documents and altered them by "mix[ing them] together," thus returning them in a disorganized mess. As discussed below, the alleged damages all relate to the significant additional cost to use the documents in the course of *Kwong I*. This meets the definition of spoliation—a duty not to destroy or alter evidence. (See *Cedars-Sinai*, *supra*, 18 Cal.4th at p. 8; *Williams*, *supra*, 167 Cal.App.4th at p. 1223.)

10

Contrary to the allegations in the complaint, Kwok's interrogatory responses and attached documentation demonstrate that the alleged damages were, in fact, related to the *Kwong I* litigation.[4] In her responses to interrogatories, Kwok claimed damages of approximately $370,000 paid for the accountant who acted as their expert witness at trial in *Kwong I* and Kwok's lost income from responding to discovery requests in *Kwong I*. In response to discovery in *Kwong II*, Kwok produced bills and checks to pay the forensic accountant to review Stan's financial records. The accountant's bills specifically relate to review of documents connected to the litigation. They itemize the review of documents to prepare for depositions and document production, document analysis in "preparation for trial," preparation of trial exhibits, working with appellant's counsel in preparing his closing argument, and for working on a "closing brief" and "rebuttal brief". These bills that make up Kwok's alleged damages of $370,000 are not, as she argues, separate from the litigation in *Kwong I*. The forensic accountant was hired to review the documents in anticipation of litigation and to act as an expert in preparing trial exhibits, pleadings and providing advice to counsel. These litigation costs are not recoverable as damages. "[T]he general rule [is] that the expenses of litigation are ordinarily not considered tort

---

[4] A court "passing upon the question of the demurrer may look to affidavits filed on behalf of plaintiff, and the plaintiff's answers to interrogatories [citation], as well as to the plaintiff's response to request for admissions. [Citations.]" (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.) The court will take judicial notice of admissions, interrogatories and affidavits "only where they contain statements of the plaintiff or his agent which are inconsistent with the allegations of the pleading before the court." (*Id.* at p. 605.) Thus, " 'judicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.' [Citation.]" (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 375.) "Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) "[A] complaint's allegations may be disregarded when they conflict with judicially noticed discovery responses. [Citation.]" (*Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal.4th 71, 83.)

damages." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 83, fn. omitted.)

Therefore, these alleged damages are not the result of the break-in, but from the spoliation of evidence needed for the *Kwong I* trial. Kwok does not claim any damages to her property as a result of the alleged trespass and conversion. She assigns no monetary value to the stolen bicycle and does not itemize or value any other personal property that was stolen. The only damages alleged are for the forensic accountant and Kwok's time and energy for reviewing and analyzing the stolen and returned documents, which are not recoverable damages. (See *Forbes v. County of San Bernardino* (2002) 101 Cal.App.4th 48, 59 ["[R]ecognizing liability in this context would encourage the kind of 'derivative' litigation the Supreme Court sought to avoid. Indeed, such litigation already has occurred, with the prior action arising from the original contractual dispute spawning the current tort action alleging destruction of records."].)

While this case is unusual in that the spoliated evidence was stolen and later returned, the policy rationales outlined by the Supreme Court in *Cedars-Sinai* still apply. Kwok had use of all the documents at trial, so she cannot claim respondents' actions affected the outcome of the litigation. Instead, she is seeking to recover litigation-related expenses for spoliation of evidence.

Finally, Kwok argues that the policy rationales for eliminating a tort remedy for spoliation of evidence do not properly apply here. She contends that the fact the theft of the documents occurred during the *Kwong I* litigation should not preclude her from having her day in court. Kwok, however, was given her day in court. She sought to raise these precise claims in *Kwong I*, and the court elected not to allow them. Rather than filing a second lawsuit, Kwok could have appealed the court's denial of her motion to amend her cross-complaint and dismissal of the cross-complaint.

Moreover, Kwok could have pursued other remedies during the *Kwong I* litigation. For example, the alleged theft of the documents relevant to the litigation could have been addressed in *Kwong I* through a motion for sanctions or even criminal penalties. (*Cedars-Sinai*, *supra*, 18 Cal.4th at pp. 11–13.) Alternatively, Kwok could have

12

preserved the right to recover expert fees as costs by making an offer to compromise under Code of Civil Procedure section 998, in an amount equal to or greater than the eventual award granted to the Kwongs. (*First Nationwide Bank v. Mountain Cascade, Inc.* (2000) 77 Cal.App.4th 871, 875-876.) In any event, filing a separate tort action to address the disruption of evidence was not a proper legal remedy.

We, therefore, conclude that the trial court correctly characterized Kwok's complaint in *Kwong II* as seeking to recover on a cause of action for spoliation of evidence which is prohibited by law.[5] Accordingly, we affirm.

## IV.

## DISPOSITION

The judgment is affirmed. Cost on appeal are awarded to respondents.

---

[5] Because we affirm the judgment on the ground that the demurrer was correctly sustained, we need not also decide if the alternative motion to strike the complaint was erroneously granted.

_____

RUVOLO, P. J.


We concur:


_____

REARDON, J.


_____

STREETER, J.

A143795, *Kwok v. Kwong*