Filed 8/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAOSD ASBESTOS CASES | |
| DELGADINA ALFARO, | B281022 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC583520/ JCCP4674) |
| v. | |
| COLGATE-PALMOLIVE COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John Kralik, Judge. Reversed and remanded.

Foley & Mansfield, Gary D. Sharp, Keith M. Ameele, Louis C. Klein, Peter M. Mularczyk and Margaret I. Johnson for Defendant and Appellant.

The Lanier Law Firm and Mark A. Linder for Plaintiff and Respondent.

## INTRODUCTION

This is the second appeal arising out of a lawsuit by plaintiff Elizabeth Alfaro,[1] in which she alleged that she developed mesothelioma as a result of exposure to asbestos contained in talcum powder products. Her claims for negligence and strict product liability proceeded to trial against two defendants, including appellant Colgate-Palmolive Company (Colgate), a talcum powder manufacturer. The jury found for Colgate on the issue of exposure. We previously affirmed that judgment on appeal.

Colgate now appeals the trial court's order granting Alfaro's motion to tax costs. Colgate argues it was entitled to costs as the prevailing party under Code of Civil Procedure section 1032,[2] as well as expert witness fees after Alfaro rejected an offer to compromise under section 998. The court denied the entirety of Colgate's request for over $300,000 in costs, finding that Alfaro had no ability to pay and that it would be unjust to impose a large cost award under the circumstances. Colgate contends the trial court lacked the authority to exercise its discretion in this manner and, further, that Alfaro failed to present sufficient evidence of an inability to pay. We agree that the trial court abused its discretion in denying all costs requested by Colgate and therefore reverse. The trial court also erred in failing to determine whether Colgate made its section 998 offer in

---

[1] Alfaro died on March 15, 2017, while her appeals were pending. On July 5, 2017, we granted plaintiff's unopposed motion seeking to substitute her mother, Delgadina Alfaro, as her successor-in-interest in this action.

[2] All further code citations are to the Code of Civil Procedure unless otherwise indicated.

2

good faith.  We therefore remand to allow the trial court to reach that issue in the first instance.

## FACTUAL AND PROCEDURAL HISTORY

### I. *The Lawsuit*

Alfaro was diagnosed with mesothelioma in her lungs and abdomen in 2015, at age 38.  She filed this action in May 2015, alleging causes of action for negligence and strict product liability against 14 defendants, including Colgate and talc supplier Imerys Talc America, Inc. (Imerys).  She alleged that her mesothelioma was caused by exposure to asbestos contamination in talcum powder products she used as a child.  Ultimately, 12 defendants were dismissed prior to trial, leaving only Colgate and Imerys.

### II. *Offer to Compromise*

Colgate moved for summary judgment in February 2016.  On April 6, 2016, the day before the hearing on the motion, Colgate served an offer to compromise pursuant to section 998.  Therein, Colgate offered to settle the dispute for a mutual waiver of costs in exchange for a dismissal of Alfaro's claims.  Alfaro did not accept the offer.

On April 15, 2016, the court issued a written ruling denying summary judgment.  The court noted that it "shares [Colgate's] concern about the potential layers of speculation involved in Plaintiff's theory of liability."  However, the court concluded Colgate had failed to meet its initial burden and, further, that there were triable issues of fact precluding summary judgment.

## III. *Trial, Verdict, and Appeal*

The case proceeded to trial against Colgate and Imerys. After three weeks of trial and several days of deliberations, the jury voted nine to three on the first question of the special verdict form, finding that Alfaro was not exposed to asbestos from Colgate's talcum powder. Accordingly, the court entered judgment for Colgate and Imerys in August 2016.

Alfaro appealed, arguing that the trial court erred in excluding testimony from one of her experts regarding her exposure to asbestos. We affirmed the judgment in a prior unpublished opinion, *Alfaro v. Imerys Talc America Inc.* (Aug. 25, 2017, B277284) (nonpub. opn.).

## IV. *Costs*

Colgate filed a memorandum of costs in August 2016, requesting a total of $311,543.86 in costs, as follows: $2,385 for filing and motion fees; $150 for jury fees; $33,668.49 in deposition costs; $115,610.06 in expert witness fees pursuant to section 998; $12,133 for models, blowups, and photocopies of exhibits; $7,046 for court reporter fees; and $140,551.31 in trial travel and lodging costs. -

Alfaro filed a motion to tax Colgate's costs, arguing that for all of the costs requested, Colgate failed to show that the costs were reasonable and necessary and failed to provide proof of the costs. Alfaro also argued that Colgate's request for expert witness fees was based on a "token" bad faith offer to compromise under section 998.

Colgate opposed, attaching receipts and invoices in support of the costs it claimed. Colgate argued that the items sought were properly recoverable, reasonably necessary and reasonable

4

in amount. Colgate withdrew $380.41 in travel expenses, stating those costs were asserted in error.

Alfaro filed a reply. In light of the receipts submitted by Colgate, she withdrew her motion with respect to jury fees and court reporter fees. She also withdrew her objections to particular items, based on the documentation provided by Colgate.

The court issued a minute order continuing the hearing on Alfaro's motion to tax costs. The court stated it was "concerned that an award of costs against Ms. Alfaro under the facts of this case will violate fundamental principles of due process of law." The court directed the parties to be prepared to address this issue at the hearing.

At the hearing in October 2016, the court indicated it felt imposing a large cost award in some cases represented a "problem with the way justice was being imposed . . . a problem of due process." The court further stated that a plaintiff like Alfaro "doesn't have fair notice of what the penalty [for bringing a lawsuit] will be. The penalty is, in view of her assets, extremely out of proportion to her means." The court believed that Alfaro, "as far as I know, and I think it's highly likely, has no money. . . . I think it's admitted she has very little life left. And so I think that the state's purposes for its statute are just not served here in any meaningful way. . . . She's being punished totally out of proportion to the act that she committed, which was to bring this case without being sure of the science. But she herself has no way of understanding that science." In addition, the court noted it did not know the extent of Alfaro's assets, "but through the testimony I got a pretty good idea of what her life is and where

5

it's going."  The court allowed the parties to submit supplemental briefing on this issue.

Colgate filed a supplemental opposition, arguing that Alfaro had never objected on the basis of due process.  Colgate further asserted that there was no due process violation and that the court lacked the authority to deny costs based on plaintiff's ability to pay.

In her supplemental brief, Alfaro stated that she "lacks the resources with which to pay even a modest amount of Colgate's costs."  Specifically, she noted her terminal condition and the parties' stipulation that her medical expenses totaled $320,000 at the time of trial.  She also pointed to evidence that she was disabled and unemployed.  Prior to her diagnosis, Alfaro "worked hourly jobs in retail on a part-time basis."  Alfaro also stated that she and her family had "modest means," and did not "have any assets with which to pay" hundreds of thousands of dollars in costs.  She cited to evidence that her mother lived with Alfaro's aunt and her brother was "staying" with Alfaro in Los Angeles.

The court took the matter under submission.  In December 2016, it issued a statement of decision granting Alfaro's motion to tax costs and denying all costs requested by Colgate.[3]  The court found, based on the evidence at trial, that Alfaro was unemployed and unlikely to return to work, there were no other possible sources of asbestos exposure, and that she did not recover from any of the other defendants in the case.  The court also credited Alfaro's evidence "showing that she had no means to pay any award of costs, and that she faces prohibitive medical expenses in connection with her illnesses."

---

[3] The court also denied the costs requested by Imerys, totaling over $300,000.  Imerys is not a party to this appeal.

The court concluded it had the "inherent power to remit costs whenever to do so would be in the interests of justice or where to do so would infringe upon the right to seek redress of grievances," citing *Martin v. Superior Court* (1917) 176 Cal. 289 (*Martin*). The court noted that section 1033.5 required allowable costs to be "reasonable in amount," and concluded that "such language requiring 'reasonableness' permits the discretion necessary to decline to award costs in a case such as this." The court further explained its view that an award of costs against Alfaro would effect "an inhumane and indecent result." It continued, finding that Alfaro "is a seriously ill young woman caught in the middle of a hotly contested scientific debate and a contested investigation of events that occurred decades ago. The parties conducting this debate and investigation are well-financed interest groups that have a vested financial interest in the outcome which far exceeds Ms. Alfaro's interest. . . . Her 'choice' of whether to proceed cannot be truly independent, and it is profoundly unfair to punish her. If it were the unsuccessful attorneys or corporate interests who were to be punished based on the outcome, there might be some rationality to the state's costs scheme, but in this particular case it operates arbitrarily."

In light of this conclusion, the court did not reach the issue whether Colgate's section 998 offer was made in good faith. The court noted, however, that "there is a very substantial issue" on this point and that Colgate's offer "made no attempt to compromise this issue based upon the probabilities of an adverse outcome or take into account the huge additional litigation expenses that [Colgate would] incur in any event."

7

Colgate timely appealed from the trial court's order.[4]

## DISCUSSION

Colgate contends the trial court erred in granting Alfaro's motion to tax all of Colgate's costs. Specifically, Colgate argues the trial court improperly considered evidence of Alfaro's financial situation in declining to award any of the costs incurred by Colgate as the prevailing party in the litigation. In addition, Colgate asserts the court abused its discretion by failing to assess whether its offer to compromise was made in good faith, instead denying Colgate's request for expert witness fees based on Alfaro's inability to pay. We agree with Colgate's contentions and reverse.

### I.    *Costs Claimed Pursuant to Sections 1032 and 1033.5*

Section 1032, subdivision (b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Section 1033.5 sets forth which items are allowable as costs and which are not. To be allowable, costs must be "reasonable in amount" and "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2)-(3).) Section 1033.5 specifically allows for many of the categories claimed by Colgate: filing, motion, and jury fees; certain deposition costs; the cost of models, blowups, and photocopies of exhibits if "reasonably helpful to aid the trier of fact"; and court reporter fees. (§ 1033.5, subd. (a).)

---

[4] Colgate concurrently filed a petition for writ of mandate on the same issue. We denied that petition, as it challenged an appealable postjudgment order. (§ 904.1, subd. (a)(2).)

8

Generally, we review a trial court's order taxing costs for an abuse of discretion. (*Posey v. State of California* (1986) 180 Cal.App.3d 836, 852.) Absent a showing of abuse of discretion, the trial court's allowance or disallowance of costs will not be disturbed on appeal. (*Ibid.*) However, whether a trial court may consider a party's ability to pay in awarding costs under the statute is a question of law, which we review de novo. (See *Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.)

In her motion to tax costs, Alfaro initially challenged all of the costs as unsupported and unnecessary. She then withdrew her objection to certain items based on supporting documentation provided by Colgate. After the court raised the issue sua sponte, Alfaro argued that the court could consider her inability to pay as part of its assessment of the reasonableness of the costs. Colgate countered that the court could not consider the losing party's ability to pay, citing *Nelson v. Anderson* (1999) 72 Cal.App.4th 111 (*Nelson*).

We find *Nelson* instructive. Nelson and Anderson were the cofounders and sole shareholders in a corporation engaged in a business that eventually failed. (*Nelson, supra*, 72 Cal. App.4th at p. 117.) Nelson and two other plaintiffs sued Anderson and the corporation's law firm. The two other plaintiffs settled with the law firm before trial; the jury returned a verdict in favor of the law firm and against Nelson. (*Id.* at p. 122.) The law firm claimed costs of $278,000, but the trial court, upon Nelson's motion to tax, disallowed all but $25,000. (*Id.* at p. 128.) The court disallowed two-thirds of the firm's pretrial costs, reasoning that the firm had waived the right to recover from the two settling plaintiffs and it would be unfair to permit the law firm to collect them from Nelson. (*Ibid.*) The court also agreed with

9

Nelson "that it would be unfair to assess all [the firm's] costs against her, '[g]iven the disproportionate resources available to Nelson.'" (*Ibid.*)

The appellate court found that none of the bases used by the trial court to reduce the allowable costs were authorized under the statute. Absent statutory authority, "the court has no discretion to deny costs to the prevailing party." (*Nelson, supra*, 72 Cal. App.4th at p. 129, citing *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, 890.) To that end, "'[a] court should be cautious in engrafting exceptions onto the clear language of . . . section 1032.' [Citation.]" Nor should it "'read into the statute allowing costs a restriction which has not been placed there.'" (*Nelson, supra*, 72 Cal. App.4th at p. 129.)

The court then examined whether the trial court could consider Nelson's "more limited resources" to support reducing a cost award section 1032. Nelson argued it could, relying on *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102 (*Santantonio*), a case awarding costs on an offer to compromise under section 998.[5] The *Nelson* court acknowledged that "section 998 gives the trial court discretion to consider a party's ability to pay costs, when considering costs recoverable under that section." (*Nelson, supra*, 72 Cal. App.4th at p. 129, citing *Santantonio, supra,* 25 Cal.App.4th 102.) However, the appellate court disagreed that a court had the same discretion under section 1032: "[t]here is no language in section 998 which would transfer the discretion of that section to a

---

[5] As we discuss further in Section II, *post*, a prevailing party who has made a valid pretrial offer to compromise pursuant to section 998 is eligible for specified costs, so long as the offer was reasonable and made in good faith.

motion to tax costs recoverable by the prevailing party under sections 1032 and 1033.5, and unrelated to section 998." (*Nelson*, *supra*, 72 Cal.App.4th at p. 129; see also *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1397 [rejecting losing party's contention that the trial court abused its discretion in not considering the parties' respective financial positions in awarding costs pursuant to section 1032].)

Alfaro cites no authority, and we are aware of none, holding that the language of section 1033.5 allowing costs that are "reasonable in amount" and "reasonably necessary to the conduct of the litigation" also confers authority for the court to analyze whether costs are reasonable based on the losing party's ability to pay. Instead, the cases analyzing costs under the applicable statutes focus on whether certain claimed costs were reasonable or necessary. (See, e.g., *Thon v. Thompson* (1994) 29 Cal.App.4th 1546, 1549 [deducting the difference between chartered private plane and commercial flight to attend depositions].)

Further, the cases relied upon by Alfaro and the trial court are distinguishable. Several concern the court's authority to protect an indigent plaintiff's right of access to the court by waiving fees and costs. (See *Martin v. Superior Court*, *supra*, 176 Cal. 289 [discussing court's inherent power to waive court fees and costs]; *Sutter County v. Superior Court for Sutter County* (1966) 244 Cal.App.2d 770, 775 [court's authority to exempt indigent plaintiff from compliance with the statutory provision for a cost bond in lawsuits against public entities].) Others, such as *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 477 (*Garcia*), allow a court to consider an ability to pay as part of the lodestar determination for a reasonable attorney fee award. In *Garcia*, the court considered the language of former Civil Code section

11

1354, subdivision (c), part of the Davis–Stirling Common Interest Development Act, providing: "'In an action to enforce the governing [homeowner's association] documents, the prevailing party shall be awarded reasonable attorney's fees and costs.'" (*Garcia, supra,* at p. 469.) The court concluded, "[i]n determining the amount of fees to be awarded to the prevailing party where the statute, as here, requires that the fee be reasonable, the trial court must therefore consider the other circumstances in the case in performing the lodestar analysis. Those other circumstances will include, as appropriate, the financial circumstances of the losing party and the impact of the award on that party." (*Id.* at pp. 476–477.) We note that the *Garcia* court cited to section 998 as another statute allowing consideration of the economic circumstances of the parties, but did not reference sections 1032 or 1033.5, the statutes at issue here. (*Id.* at p. 476.) We are not persuaded that the statutory language of the latter statutes permits the same interpretation, nor that the imposition of reasonable, enumerated costs as a matter of right threatens litigants' right of access to our courts. (See also *Perez v. County of Santa Clara* (2003) 111 Cal.App.4th 671, 680–681 ["'Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable, and, compared to the costs of attorneys' fees, small.'"].)

We conclude that Colgate is entitled to its allowable costs under sections 1032 and 1033.5. Alfaro has conceded that certain items are allowable; thus, Colgate is entitled to recover them as a matter of right. With respect to the remaining items, the trial court did not consider Alfaro's challenges to specific costs or assess which costs were reasonable in amount and reasonably

12

necessary to the litigation. We therefore remand to allow the trial court to make that determination in the first instance.

## II. *Expert Fees Claimed Pursuant to Section 998*

Colgate also sought recovery of its expert witness fees pursuant to section 998. "Under section 1033.5, subdivision (b)(1), . . . parties may not recover expert witness fees as costs 'except when expressly authorized by law.' Such express authorization exists" under section 998. (*First Nationwide Bank v. Mountain Cascade, Inc.* (2000) 77 Cal.App.4th 871, 875-876.)

Section 998 authorizes a prevailing party to recover its costs from a losing party who rejected a reasonable, good faith offer to compromise. (*Nelson, supra*, 72 Cal.App.4th at p. 134; § 998, subd. (c)(1).) Good faith requires the offer be "realistically reasonable under the circumstances of the particular case," and carry with it a reasonable prospect of acceptance. (*Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821.) Further, recoverable costs must have been "actually incurred and reasonably necessary" to the preparation of the case. (§ 998, subd. (c)(1).)

Whether a section 998 offer was reasonable and made in good faith is left to the sound discretion of the trial court. (*Nelson, supra*, 72 Cal.App.4th at p. 134.) "Similarly, the decision to award expert witness fees, and the determination of whether these fees were reasonably necessary, are issues left to the discretion of the trial court." (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1484.) "The trial court, having heard the entire case and observed the expert witnesses' testimony, is in a far better position than an appellate court to exercise this discretion and determine what fees were reasonably necessary." (*Id.* at pp. 1484, 1488.) Thus, an appellate court ordinarily should reverse the trial court's determination only if it finds "in

13

light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result." (*Id*. at p. 1484.) Alternatively, an appellate court may reverse the denial of statutorily authorized fees where the trial court failed to exercise its discretion to determine whether the requested fees were reasonable. (See *Garcia, supra,* 174 Cal.App.4th at p. 477 ["a trial court's failure to exercise discretion is 'itself an abuse of discretion'"].)

Here, there is no dispute that Alfaro failed to obtain a more favorable result at trial than the offer to compromise. However, the court expressly declined to reach the issue whether Colgate's section 998 offer was made in good faith, nor did it make any findings as to whether that offer was reasonable, or whether the requested expert witness fees were reasonably necessary to the litigation.

In contrast to the restrictions in section 1032, courts have interpreted the discretionary authority in section 998 to allow the consideration of a party's ability to pay when determining the appropriate recovery under that statute. (See *Nelson, supra*, 72 Cal.App.4th at p. 129; *Santantonio, supra,* 25 Cal.App.4th at p. 125, fn. 7 ["Section 998 . . . permits the trial court, via exercise of discretion, to consider a party's ability to pay costs."]; see also *Seever v. Copley Press, Inc*. (2006) 141 Cal.App.4th 1550, 1561–1562 ["If the goal of . . . section 998 is to encourage fair and reasonable settlements--and not settlements at any cost--trial courts in exercising their discretion must ensure the incentives to settle are balanced between the two parties. Otherwise less affluent parties will be pressured into accepting unreasonable offers just to avoid the risk of a financial penalty they can't afford."].) Alfaro thus argues that the trial court properly

exercised its discretion in refusing to award any expert witness fees based on her inability to pay.

We disagree. Colgate was entitled to seek recovery of its postoffer expert witness fees pursuant to section 998. In order to properly exercise its discretion regarding what amount, if any, it was reasonable for Alfaro to pay, the court was required to consider *all* of the relevant factors. Thus, the court could consider Alfaro's financial circumstances, but it also should have assessed whether the offer to compromise was reasonable and made in good faith, and if so, whether the fees requested by Colgate were incurred and reasonably necessary to the litigation. Here, the trial court expressly declined to make these findings and therefore failed to properly evaluate whether any award was appropriate under section 998.

We also note that while there was some evidence in the record regarding Alfaro's limited income and her mounting medical expenses, there was insufficient evidence from which the trial court could have found she lacked the ability to pay *any* cost award. (See *Villanueva v. City of Colton* (2008) 160 Cal. App.4th 1188, 1204 [plaintiff must provide evidence of inability to pay, such as "a declaration setting forth his gross income, his net income, his monthly expenses, his assets, or any other information which . . . would lend support to his position"].) Indeed, the trial court made several statements to that effect during oral argument, noting that while it seemed Alfaro had limited finances, the court did not actually know the full extent of her assets or income.

We therefore remand to allow the trial court to exercise its discretion in determining whether Colgate's section 998 offer was made reasonably and in good faith; and if so, the amount of any

reasonably necessary expert witness fees.  To the extent the record contains sufficient evidence supporting a finding of Alfaro's inability to pay, the court is within its discretion to consider that factor as well.

## DISPOSITION

Reversed and remanded.  Colgate is awarded its costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

MANELLA, Acting P.J.

MICON, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.