Filed 10/25/22 Diaz v. Gau CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLOS DIAZ, | H048094 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 17CV312555) |
| v. | |
| SHEMIN GAU, | |
| Defendant and Respondent. | |

This appeal by the prevailing plaintiff in a personal injury jury trial calls for us to determine (1) whether a trial court may rely on a defendant's present inability to satisfy a judgment in deciding whether a plaintiff's offer of settlement under Code of Civil Procedure section 998[1] was reasonable and made in good faith, (2) whether a claim for prejudgment interest under Civil Code section 3291 is subject to the trial court's discretion to strike or tax costs otherwise available under section 998, and (3) whether this trial court abused its discretion in striking all expert fees based solely on the defendant's financial condition, where the defendant declined to provide information as to the value of his home and its encumbrances. Answering the first two questions in the negative, we reverse.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

# I.    BACKGROUND

On July 3, 2017, Diaz sued Gau for negligence and negligence per se. Diaz alleged that on November 18, 2016, he was travelling on his motorcycle when Gau's vehicle struck him. Diaz, then 34, suffered significant orthopedic injuries and a permanently disabling traumatic brain injury.

At trial, the jury returned a verdict finding that Gau was liable for Diaz's injuries and awarding economic damages of $3,732,550.50. The award omitted noneconomic damages, because Diaz's own insurance policy at the time of the collision did not cover his motorcycle.

Eighteen months before trial, Diaz had offered to settle with Gau for $999,999.99, with a mutual waiver of costs. In making the offer, Diaz specified that his offer was made pursuant to section 998 (998 offer); Gau did not accept. Accordingly, after trial, Diaz filed a memorandum of costs seeking to recover costs from Gau, including $586,983.88 in prejudgment interest under Civil Code section 3291 and $247,014.08 in expert fees. Diaz itemized the total fees incurred for each of 13 named experts.

Gau filed a motion to strike or tax costs, contending that all costs were unnecessary, excessive, and not recoverable. Gau argued that no costs were recoverable under section 998 because (1) Diaz was on notice that the 998 offer, though otherwise reasonable, was too high for Gau to afford without selling his home; (2) Diaz knew or should have known that there was no reasonable prospect of Gau accepting it; and (3) Diaz therefore did not make the offer in good faith. Gau cited his liability insurance coverage limit of $25,000 and the failure of a pretrial attempt to secure a cash-out refinancing of his home mortgage—where the express purpose was to settle litigation other than a small-claims matter—as evidence that Diaz made his 998 offer in bad faith. Gau provided a "Declaration of Assets and No Other Insurance" in which he itemized and estimated the value of his personal property and investment accounts, with an aggregate stated value of $651,100. As to the value of his single-family residence in

Cupertino, however, he omitted any estimate of its value or any encumbrances, stating only that he "own[ed] it subject to a mortgage."

Gau also objected that Diaz had attached to his memorandum of costs "no invoices and no proof of payment as to any item" of memorialized costs. Gau's counsel raised no specific claim of unreasonableness other than to assert: "Defendant cannot challenge the requested items without having the documentation that purports to support the requested costs."

The trial court issued a written order granting in part the motion to strike or tax costs. As to expert fees and prejudgment interest, the court determined that Diaz did not make the 998 offer in good faith because there was at the time no reasonable prospect of acceptance. The court further determined that the expert fees were not reasonable. The court alternatively stated that it would exercise its discretion to deny all expert fees "in light of [Gau's] financial condition and low insurance policy limits." The court denied the motion as to amounts in items of costs recoverable under sections 1032 and 1033.5 as a matter of right. [2] As a result, of the total claimed costs of $887,576.67, the court awarded costs to Diaz in the amount of $48,453.03.

Diaz timely appealed.

## II.    DISCUSSION

**A.    *Standard of Review***

Beyond the costs a prevailing party shall recover as of right under sections 1032 and 1033.5, subdivision (d) of section 998 provides that "[i]f an offer made by a plaintiff [under subdivision (a)] is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the

_____

[2] The awarded costs of $48,453.03 included: (1) filing and motion fees of $495; (2) jury fees of $1,480.71; (3) service of process of $1,397.65; (4) deposition costs of $33,075; (5) court reporter fees of $5,909.50; (6) enlargements and photocopies of exhibits of $6,241; and fees for electronic filing or service of $186.12. These amounts in fact total $48,784.98.

court . . . , in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs." (§ 998, subd. (d).) Courts of appeal have further discerned in section 998 a legislative intent to limit its application to reasonable offers made in good faith. (*Arno v. Helinet Corp.* (2005) 130 Cal.App.4th 1019, 1024; accord, *LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1126 (*LAOSD*).)

We review for abuse of discretion both a trial court's threshold determination whether a section 998 was reasonable and made in good faith and its determination that costs should be stricken or taxed. (*LAOSD*, *supra*, 25 Cal.App.5th at p. 1123; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700.) But we review de novo the trial court's resolution of questions of law that inform its exercise of discretion. (*LAOSD*, *supra*, at p. 1123.) As to the trial court's resolution of questions of fact, "[t]he trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision." (*Lubetzky v. Friedman* (1991) 228 Cal.App.3d 35, 39.) A trial court abuses its discretion when its ruling is "whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason," or where it "act[s] on a mistaken view about the scope of its discretion." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.)

**B.     *Analysis***

**1.     *Reasonable Good Faith and the Availability of Costs under Section 998***

Gau contends the trial court properly considered his inability to pay in determining the 998 offer was not reasonable and made in good faith, because there was no reasonable chance Gau would accept an offer of settlement that he could not pay. It is true that "[g]ood faith requires [a 998] offer be 'realistically reasonable under the circumstances of the particular case,' and carry with it a reasonable prospect of acceptance. [Citation.]"

4

(*LAOSD*, *supra*, 25 Cal.App.5th at p. 1126.) But "a reasonable prospect of acceptance" is not dependent upon the offeree's present ability to pay the proposed settlement amount. (See *Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924.) Rather, the court must consider (1) whether the 998 offer was within the " 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known[,]" and (2) whether the offeror knew "that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the 'offer was a reasonable one,' such that the offeree had a 'fair opportunity to intelligently evaluate the offer[.]' " (*Id.* at pp. 924-925.) To the extent the second consideration centers on the offeree's perception of the offer's reasonableness, this is because "the offeree needs information bearing on the issue of liability as well as on the amount of damages because these are the issues upon which a verdict would rest and because the 998 offer, if accepted, would be in lieu of that verdict." (*Id.* at p. 925.) The focus of each consideration, accordingly, is on the reasonableness of the 998 offer relative to the reasonable range of potential trial outcomes, not relative to the offeree's present liquidity or the form of the offeree's assets.

Gau cites to no authority to support his contention that we should narrow our conception of reasonable good faith by requiring a third element—whether the offeror knew the offeree lacked sufficient capital to meet the terms of the offer without selling his home. We discern in neither the case authority nor the statute any basis for this proposed limitation on section 998. Logic and the policy considerations animating section 998 and the cases interpreting it likewise offer no support. After all, any constraint on a defendant's means of satisfying a 998 offer may likewise impede the execution of a greater judgment obtained at trial. We have no reason to doubt that competent counsel, especially if their own fees are tied to recovery, will appropriately advise a client formulating a 998 offer as to the anticipated costs and challenges of enforcement, as well as the costs of litigation over and above those theoretically available

5

under section 998. The offer must be reasonable in terms of the expected damages award at trial, not in terms of whatever fraction of a reasonably likely trial judgment a plaintiff offeror anticipates being able to promptly collect. We therefore conclude that the trial court erred in its interpretation of the statute.

Because, as we will discuss below, the trial court's alternative stated reasons for striking all costs—other than those to which sections 1032 and 1033.5 entitled Diaz independent of section 998—are not supported by substantial evidence on the current record, we are unable to deem the error harmless. Diaz obtained a greater award at trial; his 998 offer is therefore presumed to have been reasonable; and Gau had the burden to show otherwise. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134, as mod. on denial of rehg, (June 14, 1999); *Lewis v. Ukran* (2019) 36 Cal.App.5th 886, 897.) Other than arguing that his financial means delimit the reasonableness of the offer, Gau conceded in the trial court that the 998 offer was in all other respects reasonable at the time it was made. He accordingly did not meet his burden of establishing the absence of reasonable good faith.

## 2. *Prejudgment Interest under Civil Code Section 3291*

As to Diaz's claim for prejudgment interest, the trial court relied exclusively on what we have now concluded was its erroneous consideration of Gau's ability to pay in evaluating whether the 998 offer was reasonable and made in good faith. On appeal, however, the parties disagree as to whether the trial court nonetheless has discretion under section 998 or Civil Code section 3291 in setting the amount of postoffer, prejudgment interest. Given the plain and unambiguous language of the latter provision, we conclude that the Legislature did not intend for trial courts to have discretion to tax recoverable prejudgment interest.

Section 3291, states, in relevant part: "If the plaintiff makes an offer pursuant to Section 998 . . . which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment

6

shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 . . . which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment." The Legislature's use of "shall" in Civil Code section 3291 indicates it is a mandatory provision. (*People v. Heisler* (1987) 192 Cal.App.3d 504, 506.)

Section 998, subdivision (d), in contrast, specifies as to expert fees that the court "in its discretion, *may* require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . ." Section 1033.5's qualification limiting the award of costs—otherwise mandatory under section 1032—based on the reasonableness of the amount and their reasonable necessity in the litigation is similarly instructive. (§ 1033.5, subd. (c); *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1200.) The Legislature's omission of any comparable limitation in Civil Code section 3291, reflects what we take to be a deliberate election to make prejudgment interest at the statutory rate mandatory. Accordingly, the trial court is required to award prejudgment interest under section 3291 where the statutory conditions are met. (See, e.g., *Morin v. ABA Recovery Service, Inc.* (1987) 195 Cal.App.3d 200, 207.)

The Legislature's use of the permissive "may" in section 998's provision for expert fees does little to dilute its plain intent as to prejudgment interest as expressed in Civil Code section 3291. Even if we were to consider the plain language of the statutes ambiguous in combination, we would reach the same conclusion: " 'If conflicting statutes cannot be reconciled, . . . more specific provisions take precedence over more general ones [citation].' [Citation.]" (*State of Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960.) There can be no question, as between section 998 and Civil Code section 3291, that the latter provision is the more specific, treating as it does a single component of costs recoverable by a prevailing party under section 998.

Diaz's claim for prejudgment interest from the date of his section 998 offer is therefore not subject to discretionary reduction by the trial court.

7

### 3. *Discretionary Costs*

Unlike prejudgment interest, our conclusion that the trial court erred in finding the 998 offer was not reasonable or made in good faith does not entitle Diaz to the full amount of his requested expert fees. These costs themselves must also be reasonable, and "reasonableness must be measured by considerations beyond whether it was reasonable for the offering party to have incurred the expense." (*Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1561.) This includes taking "account of the offeree's economic resources in determining what is a 'reasonable' cost award." (*Ibid.*) Accordingly, even though a court may not consider ability to pay when determining the good faith of a section 998 offer, the court may consider ability to pay in determining the reasonableness of the costs to be awarded following trial. (*LAOSD*, *supra*, 25 Cal.App.5th at p. 1127.)

In its order on the motion to tax costs, the trial court found, alternatively, that "the amounts listed on the memo of costs for expert witness fees were not reasonable" and that "the court would also exercise its discretion to deny these amounts in light of [Gau's] financial condition and low policy limits." Because the trial court disallowed the entire amount of expert fees for every one of Diaz's experts, we understand the trial court to have found that Gau had met his burden of establishing (1) that none of these expert fees were actually incurred post-offer and reasonably necessary to Diaz's recovery, or (2) that, whatever amount of expert fees were actually incurred and reasonably necessary, Gau's financial condition made it unreasonable or otherwise unjust to shift any portion of these fees from Diaz to him. We need not address whether the first of these findings is supported by substantial evidence, because the trial court acted within its discretion in striking the expert fees based on Gau's financial condition and the economic damages alone.

We consider Gau's declaration of assets to be incomplete—in its omission of concrete information as to value of his home or the mortgage encumbering his home— from one who bears the burden of establishing a basis to tax costs. And to the extent his

8

counsel appears to suggest it is relevant to our consideration of Diaz's appeal that any award of expert fees would go to Diaz's counsel rather than to Diaz, we disagree. But the trial court's conclusion that Gau's net worth was insufficient to support a discretionary award of fees was based on substantial evidence.

To be sure, that evidence came from Diaz, introduced for the purpose of defending the reasonableness and good faith of his 998 offer. Although Gau disputed the accuracy of Diaz's evidence without supplying contrary figures, Gau did aver that Diaz's evidence overstated the market value and understated the mortgage balance: the trial court was entitled to credit that information. Moreover, even treating as accurate Diaz's evidence that the value of the equity Gau holds in his home is $2.125 million, this together with the declared and undisputed value of Gau's other assets is inadequate to meet even the award of economic damages. Our conclusion as to the mandatory character of prejudgment interest under Civil Code section 3291 only widens the gap.

### III. DISPOSITION

The trial court's order on the motion to tax costs is reversed. On remand, the trial court is directed to modify the order to grant Diaz's claim for prejudgment interest under Civil Code section 3291. The order is otherwise affirmed. The parties shall bear their own costs on appeal.

9

_____

LIE, J.

WE CONCUR:


_____

GREENWOOD, P.J.


_____

GROVER, J.


*Diaz v. Gau*
H048094